LINCOLN V. HORTON
HORTON VILLAGE LAW GROUP, APC
lhorton@hortonvillagelaw.com
16236 San Dieguito Road, Suite 5-24
P.O. Box 9181
Rancho Santa Fe, CA 92067
Telephone: 858.832.8685

Counsel for Plaintiff THE PIE INSURANCE COMPANY

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA, WESTERN DIVISION

THE PIE INSURANCE COMPANY,

Plaintiff,

v.

608 POULTRY INC, 598 POULTRY INC, DA POULTRY INC, 566 MP INC, FERNANDO OJEDA RIVERA, and DOES 1 to 10, inclusive,

Defendants.

Case No. 2:26-cv-13634

**COMPLAINT FOR DAMAGES**

Plaintiff THE PIE INSURANCE COMPANY ("Plaintiff" or "Pie") brings this action against Defendants 608 POULTRY INC ("608 Poultry"), 598 POULTRY INC ("598 Poultry"), DA POULTRY INC ("DA Poultry"), 566 MP INC ("566 MP"), FERNANDO OJEDA RIVERA ("Rivera"), and DOES 1 to 10 (collectively "Defendants"), and alleges as follows:

## THE PARTIES AND JURISDICTION

1. Plaintiff Pie is an Ohio corporation engaged in the insurance business with a statutory home office and principal place of business located at 4449 Easton Way, Suite 200, Columbus, OH 43219. Pie is authorized to transact business and has transacted business in California.

2. Plaintiff is informed and believes and based on such information and belief

alleges that Defendant 608 Poultry was a California corporation with its principal place of business located at 608 Monterey Pass Road, Monterey Park, CA 91754. 608 Poultry was at all pertinent times authorized to transact business and was transacting business in the county of Los Angeles in the state of California.

3. Plaintiff is informed and believes and based on such information and belief alleges that Defendant 598 Poultry is a California corporation with its principal place of business located at 598 Monterey Pass Road, Monterey Park, CA 91754. 598 Poultry is authorized to transact business and is transacting business in the county of Los Angeles in the state of California.

4. Plaintiff is informed and believes and based on such information and belief alleges that Defendant DA Poultry is a California corporation with its principal place of business located at 608 Monterey Pass Road, Monterey Park, CA 91754. DA Poultry is authorized to transact business and is transacting business in the county of Los Angeles in the state of California.

5. Plaintiff is informed and believes and based on such information and belief alleges that Defendant 566 MP is a California corporation with its principal place of business located at 566 Monterey Pass Road, Monterey Park, CA 91754. 566 MP is authorized to transact business and is transacting business in the county of Los Angeles in the state of California.

6. Plaintiff is informed and believes and based on such information and belief alleges that Defendant Rivera resides in the city and county of Los Angeles in the state of California.

7. The amount at issue in this case is over $75,000.00.

8. This matter is subject to the Federal District Court’s jurisdiction based on the diversity of the parties and the amount at issue pursuant to 28 U.S.C. § 1332.

9. Defendants DOES 1 to 10, inclusive, are the fictitious names of those Defendants whose true names are unknown to Plaintiff, and whose true capacities, whether as individuals, corporations, partnerships, joint venturers and/or

associations, are also unknown to Plaintiff, and when such true names are ascertained, Plaintiff will amend this complaint by inserting said true names in the place of said fictitious names in accordance with the Federal Rules of Civil Procedure. Plaintiff is informed and believes and thereon alleges that, whenever and wherever in this complaint all Defendants are the subject of the charging allegations by Plaintiff, said Does are also responsible in some manner for the events and happenings and it shall be deemed that said Defendants, DOES 1 to 10, inclusive, and each of them, are likewise the subject of said charging allegations herein by Plaintiff.

10. At all times herein mentioned, Defendants, and each of them, were the agents, servants, and employees of each of the other Defendants herein, and at the same time and place of the events hereinafter described, were acting within the course and scope of said agency and employment with the permission and consent of the other Defendants and each of them. Defendants are, and each of them is, the alter ego of the other Defendants, and Defendants are essentially the extension of each other.

## GENERAL ALLEGATIONS

11. Defendants 608 Poultry, 598 Poultry, DA Poultry and 566 MP are, or in the case of 608 Poultry were, in the poultry business.

12. Defendant Rivera is the owner of Defendant 608 Poultry.

13. Defendant 608 Poultry filed for dissolution with the California Secretary of State on June 17, 2026.

14. Prior to and during the dissolution process, Plaintiff is informed and believes and thereon alleges that assets of Defendant 608 Poultry were distributed to Defendant Rivera, as opposed to being used to pay the debt alleged owed to Plaintiff herein.

15. At Defendant 608 Poultry's request, Workers Compensation insurance policy no. WC PI 1828475-000 was issued by Plaintiff for the policy period

November 26, 2024 to November 26, 2025 ("608 Poultry Agreement").

16. At Defendant 598 Poultry's request, Workers Compensation insurance policy no. WC PI 2021185-000 was issued by Plaintiff for the policy period January 10, 2025 to January 10, 2026 ("598 Poultry Agreement").

17. At Defendant DA Poultry's request, Workers Compensation insurance policy no. WC PI 3416149-000 was issued by Plaintiff for the policy period January 8, 2026 to January 8, 2027 ("DA Poultry Agreement").

18. The DA Poultry Agreement was cancelled for non-payment effective March 30, 2026.

19. At Defendant 566 MP's request, Workers Compensation insurance policy no. WC PI 1804856-000 was issued by Plaintiff for the policy period November 6, 2024 to November 6, 2025 ("566 MP Agreement I").

20. At Defendant 566 MP's request, Workers Compensation insurance policy no. WC PI 1804856-001 (renewal) was issued by Plaintiff for the policy period November 6, 2025 to November 6, 2026 ("566 MP Agreement II").

21. The 566 MP Agreement II was cancelled for non-payment effective March 30, 2026.

22. Within this complaint the 608 Poultry Agreement, 598 Poultry Agreement, DA Poultry Agreement, 566 MP Agreement I, and 566 MP Agreement II will be referred to collectively as the "Agreement" when discussing common terms.

23. Pursuant to the terms of the Agreement, the initial premium charged for each policy is based on an estimate of payroll exposure by the insured, subject to adjustment based on a payroll and remuneration audit performed by Plaintiff after the policy period to "true-up" the estimated payroll exposure with the actual payroll exposure.

24. Pursuant to the Agreement, the post-policy "true-up" payroll audit calculates the total and final premium for the policy period. If the total premium after the post-policy payroll audit exceeds the estimated premium, then the insured

is invoiced and owes Plaintiff an additional premium for the difference between that final audit amount and the amount the insured paid previously toward the estimated premium. If the amount paid by the insured toward the estimated premium exceeds the amount of the final premium after payroll audit, then a refund is due.

25. When an Agreement is cancelled for non-payment, or any other reason, Plaintiff performs a payroll audit to determine the final premium. If the final audited premium after cancellation is more than what the insured has paid toward the estimated premium, then the insured is invoiced and owes an additional premium for the difference. If the amount paid by the insured toward the estimated premium is more than the final premium after the post-cancellation payroll audit, then a refund is owed.

26. Pursuant to the Agreement, if the insured does not cooperate with the payroll audit, then Plaintiff performs an estimated audit that is calculated based on a multiplier of the estimated premium. The insured is invoiced and owes Plaintiff for the additional premium determined by the estimated payroll audit, but may seek a revision subject to the conditions and timeline within the Agreement.

27. Plaintiff ultimately performed the required payroll audit after the conclusion of the policy period for the 608 Poultry Agreement.

28. On or about June 12, 2026, Plaintiff issued the post-policy period audit results for the 608 Poultry Agreement to 608 Poultry reflecting a total audited premium for the policy period of $807,441.00. After crediting against the final audited premium for estimated premium payments, the net additional premium owed by 608 Poultry to Plaintiff after the audit is $688,924.00.

29. On or about June 12, 2026, Plaintiff issued an invoice and demand for payment to 608 Poultry for payment of the additional premium owed for the 608 Poultry Agreement after payroll audit totaling $688,924.00.

30. In response to the invoice and additional follow-up efforts by Plaintiff, 608

Poultry has not paid, in whole or in part, the $688,924.00 owed as additional premium for the 608 Poultry Agreement after the payroll audit.

31. Plaintiff performed the required payroll audit after the conclusion of the policy period for the 598 Poultry Agreement.

32. On or about May 18, 2026, Plaintiff issued the post-policy period audit results for the 598 Poultry Agreement to 598 Poultry reflecting a total audited premium for the policy period of $384,124.00. After crediting against the final audited premium for estimated premium payments, the net additional premium owed by 598 Poultry to Plaintiff after the audit is $318,040.00.

33. On or about May 27, 2026, Plaintiff issued an invoice and demand for payment to 598 Poultry for payment of the additional premium owed for the 598 Poultry Agreement after payroll audit totaling $318,040.00.

34. In response to the invoice and additional follow-up efforts by Plaintiff, 598 Poultry has not paid, in whole or in part, the $318,040.00 owed as additional premium for the 598 Poultry Agreement after the payroll audit.

35. Plaintiff performed the required payroll audit after the cancellation of the policy for the DA Poultry Agreement.

36. On or about May 21, 2026, Plaintiff issued the post-cancellation audit results for the DA Poultry Agreement to DA Poultry reflecting a total audited premium for the applicable coverage period of $282,107.00. After crediting against the final audited premium for estimated premium payments, the net additional premium owed by DA Poultry to Plaintiff after the post-cancellation audit is $241,040.00.

37. On or about June 15, 2026, Plaintiff issued an invoice and demand for payment to DA Poultry for payment of the additional premium owed for the DA Poultry Agreement after payroll audit totaling $241,040.00.

38. In response to the invoice and additional follow-up efforts by Plaintiff, DA Poultry has not paid, in whole or in part, the $241,040.00 owed as additional

premium for the DA Poultry Agreement after the payroll audit.

39. Plaintiff performed the required payroll audit after the conclusion of the policy period for the 566 MP Agreement I.

40. On or about December 21, 2025, Plaintiff issued the post-policy period audit results for the 566 MP Agreement I to 566 MP reflecting a total audited premium for the policy period of $261,640.00. After crediting against the final audited premium for estimated premium payments, the net additional premium owed by 566 MP to Plaintiff after the audit is $172,853.00.

41. On or about July 30, 2026, Plaintiff issued an invoice and demand for payment to 566 MP for payment of the additional premium owed for the 566 MP Agreement I after payroll audit totaling $172,853.00.

42. In response to the invoice and additional follow-up efforts by Plaintiff, 566 MP has not paid, in whole or in part, the $172,853.00 owed as additional premium for the 566 MP Agreement I after the payroll audit.

43. Plaintiff performed the required payroll audit after the cancellation of the policy for the 566 MP Agreement II.

44. On or about May 13, 2026, Plaintiff issued the post-cancellation audit results for the 566 MP Agreement II to 566 MP reflecting a total audited premium for the applicable coverage period of $132,444.00. After crediting against the final audited premium for estimated premium payments, the net additional premium owed by 566 MP to Plaintiff after the post-cancellation audit is $86,087.00.

45. On or about June 2, 2026, Plaintiff issued an invoice and demand for payment to 566 MP for payment of the additional premium owed for the 566 MP Agreement II after payroll audit totaling $86,087.00.

46. In response to the invoice and additional follow-up efforts by Plaintiff, 566 MP has not paid, in whole or in part, the $86,087.00 owed as additional premium for the 566 MP Agreement II after the payroll audit.

47. In total, 566 MP still owes Plaintiff $258,940.00 for the additional

premiums owed after payroll audits for the 566 MP Agreement I ($172,853.00) and the 566 MP Agreement II ($86,087.00).

## **FIRST CAUSE OF ACTION**

(Breach of Contract Against Defendants 608 Poultry, Rivera and Does 1 to 10)

48. Plaintiff incorporates by reference each and every allegation contained in paragraphs 1 through 47 above, as though fully set forth herein.

49. At Defendant 608 Poultry's request, Plaintiff issued the insurance policy for workers compensation coverage set forth in the terms of the 608 Poultry Agreement.

50. Plaintiff fulfilled its contractual obligations to Defendant 608 Poultry by providing the insurance coverage set forth in the 608 Poultry Agreement.

51. On or about June 12, 2026, Plaintiff issued the audit results, invoice and demand for payment by Defendant 608 Poultry of the additional premium owed after payroll audit of $688,924.00.

52. Despite follow up efforts, to date Plaintiff has not received payment, in whole or in part, from Defendant 608 Poultry for the additional premium owed for the 608 Poultry Agreement after payroll audit, totaling $688,924.00.

53. Defendant 608 Poultry materially breached the 608 Poultry Agreement by failing to pay Plaintiff the additional premium owed totaling $688,924.00.

54. Defendant 608 Poultry continues to be in breach of the 608 Poultry Agreement by failing to pay Plaintiff the additional premium owed totaling $688,924.00.

55. Plaintiff did not waive or otherwise excuse Defendant 608 Poultry from its obligations pursuant to the 608 Poultry Agreement to pay Plaintiff the additional premium owed totaling $688,924.00.

56. As a direct and proximate result of Defendant 608 Poultry's breaches of its obligations pursuant to the 608 Poultry Agreement, Plaintiff has been damaged in the amount of $688,924.00 for the billed but unpaid premium.

57. Defendant Rivera is liable as a shareholder of 608 Poultry for the additional premium owed of $688,924.00, in whole or in part, based on distributions he took from Defendant 608 Poultry upon its dissolution, per Cal. Corp. Code § 2011(a)(1)(D) and other statutes and legal authority, according to proof.

58. Plaintiff seeks and is entitled to obtain a judgment for damages according to proof, plus daily pre-judgment interest calculated at the applicable statutory rate, costs of suit, and such other and further relief as the court deems proper.

## SECOND CAUSE OF ACTION

(Breach of Contract Against Defendants 598 Poultry and Does 1 to 10)

59. Plaintiff incorporates by reference each and every allegation contained in paragraphs 1 through 58 above, as though fully set forth herein.

60. At Defendant 598 Poultry's request, Plaintiff issued the insurance policy for workers compensation coverage set forth in the terms of the 598 Poultry Agreement.

61. Plaintiff fulfilled its contractual obligations to Defendant 598 Poultry by providing the insurance coverage set forth in the 598 Poultry Agreement.

62. On or about May 18, 2026 and May 27, 2026, respectively, Plaintiff issued the audit results, invoice and demand for payment by Defendant 598 Poultry of the additional premium owed after payroll audit of $318,040.00.

63. Despite follow up efforts, to date Plaintiff has not received payment, in whole or in part, from Defendant 598 Poultry for the additional premium owed for the 598 Poultry Agreement after payroll audit, totaling $318,040.00.

64. Defendant 598 Poultry materially breached the 598 Poultry Agreement by failing to pay Plaintiff the additional premium owed totaling $318,040.00.

65. Defendant 598 Poultry continues to be in breach of the 598 Poultry Agreement by failing to pay Plaintiff the additional premium owed totaling $318,040.00.

66. Plaintiff did not waive or otherwise excuse Defendant 598 Poultry from its

obligations pursuant to the 598 Poultry Agreement to pay Plaintiff the additional premium owed totaling $318,040.00.

67. As a direct and proximate result of Defendant 598 Poultry's breaches of its obligations pursuant to the 598 Poultry Agreement, Plaintiff has been damaged in the amount of $318,040.00 for the billed but unpaid premium.

68. Plaintiff seeks and is entitled to obtain a judgment for damages according to proof, plus daily pre-judgment interest calculated at the applicable statutory rate, costs of suit, and such other and further relief as the court deems proper.

**THIRD CAUSE OF ACTION**

(Breach of Contract Against Defendants DA Poultry and Does 1 to 10)

69. Plaintiff incorporates by reference each and every allegation contained in paragraphs 1 through 68 above, as though fully set forth herein.

70. At Defendant DA Poultry's request, Plaintiff issued the insurance policy for workers compensation coverage set forth in the terms of the DA Poultry Agreement.

71. Plaintiff fulfilled its contractual obligations to Defendant DA Poultry by providing the insurance coverage set forth in the DA Poultry Agreement.

72. On or about May 21, 2026 and June 15, 2026, respectively, Plaintiff issued the audit results, invoice and demand for payment by Defendant DA Poultry of the additional premium owed after the post-cancellation payroll audit of $241,040.00.

73. Despite follow up efforts, to date Plaintiff has not received payment, in whole or in part, from Defendant DA Poultry for the additional premium owed for the DA Poultry Agreement after payroll audit, totaling $241,040.00.

74. Defendant DA Poultry materially breached the DA Poultry Agreement by failing to pay Plaintiff the additional premium owed totaling $241,040.00.

75. Defendant DA Poultry continues to be in breach of the DA Poultry Agreement by failing to pay Plaintiff the additional premium owed totaling $241,040.00.

76. Plaintiff did not waive or otherwise excuse Defendant DA Poultry from its obligations pursuant to the DA Poultry Agreement to pay Plaintiff the additional premium owed totaling $241,040.00.

77. As a direct and proximate result of Defendant DA Poultry's breaches of its obligations pursuant to the DA Poultry Agreement, Plaintiff has been damaged in the amount of $241,040.00 for the billed but unpaid premium.

78. Plaintiff seeks and is entitled to obtain a judgment for damages according to proof, plus daily pre-judgment interest calculated at the applicable statutory rate, costs of suit, and such other and further relief as the court deems proper.

## FOURTH CAUSE OF ACTION

(Breach of Contract Against Defendants 566 MP and Does 1 to 10)

79. Plaintiff incorporates by reference each and every allegation contained in paragraphs 1 through 78 above, as though fully set forth herein.

80. At Defendant 566 MP's request, Plaintiff issued the insurance policies for workers compensation coverage set forth in the terms of the 566 MP Agreement I and the 566 MP Agreement II.

81. Plaintiff fulfilled its contractual obligations to Defendant 566 MP by providing the insurance coverage set forth in the 566 MP Agreement I and the 566 MP Agreement II.

82. On or about December 21, 2025 and July 30, 2026, respectively, Plaintiff issued the audit results, invoice and demand for payment by Defendant 566 MP of the additional premium owed after payroll audit for the 566 MP Agreement I of $172,853.00.

83. On or about May 13, 2026 and June 2, 2026, respectively, Plaintiff issued the audit results, invoice and demand for payment by Defendant 566 MP of the additional premium owed after post-cancellation payroll audit for the 566 MP Agreement II of $86,087.00.

84. Despite follow up efforts, to date Plaintiff has not received payment, in

whole or in part, from Defendant 566 MP for the additional premiums owed after payroll audits for the 566 MP Agreement I ($172,853.00) and 566 MP Agreement II ($86,087.00), totaling $258,940.00.

85. Defendant 566 MP materially breached the 566 MP Agreement I and the 566 MP Agreement II by failing to pay Plaintiff the additional premiums owed totaling $258,940.00.

86. Defendant 566 MP continues to be in breach of the 566 MP Agreement I and the 566 MP Agreement II by failing to pay Plaintiff the additional premiums owed totaling $258,940.00.

87. Plaintiff did not waive or otherwise excuse Defendant 566 MP from its obligations pursuant to the 566 MP Agreement I and the 566 MP Agreement II to pay Plaintiff the additional premiums owed totaling $258,940.00.

88. As a direct and proximate result of Defendant 566 MP's breaches of its obligations pursuant to the 566 MP Agreement I and the 566 MP Agreement II, Plaintiff has been damaged in the amount of $258,940.00 for the billed but unpaid premiums.

89. Plaintiff seeks and is entitled to obtain a judgment for damages according to proof, plus daily pre-judgment interest calculated at the applicable statutory rate, costs of suit, and such other and further relief as the court deems proper.

WHEREFORE, Plaintiff prays for judgment in its favor and against Defendants, and each of them, as follows:

1. For damages according to proof at trial.
2. For an award of daily pre-judgment interest.
3. For costs of suit.
4. For such other and further relief as the court may deem proper.

Bench Trial requested by Plaintiff.

DATED: November 20, 2026

HORTON VILLAGE LAW GROUP, APC

By: /s/ Lincoln V. Horton____________
LINCOLN V. HORTON
Counsel for Plaintiff THE PIE INSURANCE COMPANY